**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Dwight Davis, | CIV 12-132-PHX-GMS (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

Petitioner Carl Dwight Davis, who is confined in the Arizona State Prison Complex-Eyman, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents have filed an Answer (Doc. 12), and Petitioner has filed a Traverse and memorandum in support thereof (Docs. 16, 17).

## BACKGROUND[1]

On September 2, 2005, the Maricopa County Grand Jury returned an indictment charging Petitioner in CR 2005-127207-001 DT with seven counts of Molestation of a Child, class 2 felonies and dangerous crimes against children, in violation of A.R.S. § 13-1410 (Counts 1-3 and 5-8), and one count of Sexual Abuse, a class 3 felony and dangerous crime against children, in violation of A.R.S. § 13-1404 (Count 4). (Exh. A, Item 4.) The indictment identified the victim as C.K., a child under 15 years of age. (Id.) Although the grand jury initially alleged that Petitioner had committed Counts 1 through 7 between May

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 12 – Respondents' Answer.

1, 2005, and August 27, 2005, the State amended the indictment to reflect that Petitioner committed these crimes between January 31, 2005, and August 27, 2005. (Id., Item 56.)

The State also amended the indictment to allege, pursuant to A.R.S. § 13-604, that Petitioner had three historical felony convictions – Attempted Molestation of a Child (June 14, 1985), Possession or Use of Marijuana (June 16, 1999), and Possession or Use of Narcotic Drugs (November 24, 1999). (Id., Items 23, 24.) The State further alleged, pursuant to A.R.S. § 13-702.02, that Petitioner had committed multiple offenses on different occasions. (Id., Item 22.)

Before trial, the State filed notices of its intention to: (1) impeach Petitioner with the three aforementioned felony convictions; and (2) introduce the underlying evidence related to Petitioner's prior conviction for attempted child molestation, pursuant to Rules of Evidence 404(b) and 404(c). (Id., Items 21, 23, 34.) Petitioner waived his Sixth Amendment right to a jury trial and the case was tried before the Honorable Bethany Hicks. (Id., Item 57; Exh. E at 4-9.)

The following evidence was presented at trial. L.K. was born in March 1977, and lived at a Phoenix homeless shelter with her mother in 1992 or 1993. (Exh. C at 19, 22; Exh. E at 44-45.) During this time frame, L.K. met Petitioner, who was then 38-years-old and living at the shelter with his girlfriend, Kim Wyatt. (Exh. C at 22-23, 27.) L.K. had a tumultuous relationship with her mother, and was eventually evicted from the shelter because the two had an altercation on the premises. (Id. at 22; Exh. D at 174.)

On the day of her eviction, Petitioner approached L.K. in the courtyard, explained that he and his girlfriend had found a residence, and invited L.K. to live with them. (Exh. C at 22-23; Exh. E at 54, 65-66.) L.K. agreed, moved in with Petitioner's family, and babysat Petitioner's children in exchange for free room and board. (Exh. C at 23.) Eventually, Kim moved out of the residence, and after Kim's departure, Petitioner and L.K. began a sexual relationship. (Id. at 23-24; Exh. E at 44-45.) L.K. became pregnant with Petitioner's child, C.K., who was born in June 1994, less than 3 months after L.K.'s seventeenth birthday. (Exh. C at 19-20, 23-24; Exh. E at 44-45.)

1      Kim reconciled with Petitioner and moved back into the residence during L.K.'s

2  pregnancy. (Exh. C at 24.) Petitioner asked L.K. not to disclose his identity as the baby's

3  father to avoid upsetting Kim. (Id.) L.K. agreed and resumed her role as the residence

4  babysitter of Petitioner and Kim's children. (Id.) This living arrangement continued until

5  early 1996, when Petitioner and Kim decided to move to Missouri. (Id. at 25; Exh. E at 52-

6  54, 65-66.)

7      After the move to Missouri, L.K. was forced to move back with her mother. (Exh. C

8  at 24-25; Exh. E at 53-54, 66-67.) Nonetheless, L.K. returned to school, obtained a GED,

9  secured employment, and found her own place to live with C.K. (Exh. C at 25.)

10      Later that same year, Kim returned to Arizona by herself, moved in with L.K., and

11  then left again a few months later. (Id. at 25-26, 33-34.) After his 18-month stay in Missouri,

12  Petitioner returned to Arizona and moved into L.K.'s residence in January 1997. (Id. at 25-

13  26, 33-34.) Although Petitioner was "just a friend at first," the two resumed their sexual

14  relationship in March or April 1997. (Id. at 26, 34.)

15      In 1999, L.K. became pregnant again with her and Petitioner's son, Cael, who was

16  born in January 2000. (Id. at 20, 27; Exh. D at 25.) During L.K.'s pregnancy, Kim informed

17  her that Petitioner had been convicted of attempted child molestation in 1985. (Exh. C at 27.)

18  The record indicates that before confronting Petitioner regarding the conviction, L.K.

19  researched Petitioner's prison records and verified the truth of the conviction. (Id. at 27-28;

20  Exh. D at 19-20.) Petitioner told L.K. that a Caucasian girl whom he had taken out for a ride

21  had falsely accused him of doing something improper. (Exh. C at 28; Exh. D at 19-20; Exh.

22  E at 43-44.) Petitioner claimed that he had entered an "Alfred plea"[2] out of fear that the jury

23  would convict him because of the racial difference between himself (African-American) and

24  the alleged victim. (Exh. C at 27-28; Exh. D at 19-20; Exh. E at 20-22.)

25

26

27      [2] Petitioner meant to reference "Alford plea" as in North Carolina v. Alford, 400 U.S.

28  25, 37-38 (1970), which permits defendants to resolve their cases by virtue of no-contest
pleas.

1      Notwithstanding Petitioner's denials, the victim in the 1985 conviction, T.D., testified

2 that on her tenth birthday in mid-November 1984, Petitioner took her out alone for ice cream,

3 drove his truck to a deserted area off Camelback Road, and "started touching [her] vagina"

4 with both "his hands and his mouth." (Exh. D at 34-38.) Because T.D. could recall only the

5 gender and race of her assailant, the State called Steven William Coe, the Maricopa County

6 Adult Probation Officer who had interviewed Petitioner about the crime in 1985 to prepare

7 a presentence report. (Id. at 103-08, 110-11.) According to testimony, Petitioner told Coe that

8 T.D. had asked Petitioner to touch her and lick her, but that ultimately he wasn't sure of his

9 actions because he had been smoking marijuana. (Id. at 107; Exh. E at 42-43, 82, 85.)

10 Because Petitioner violated the terms of his initial probation sentence in 1987, he was

11 sentenced to prison on December 28, 1987, and was paroled in 1990. (Exh. E at 40-41, 44-

12 45.)

13      According to testimony, Petitioner "was always very careful with [L.K.'s] children"

14 and took stringent measures to avoid even the appearance of inappropriate physical contact

15 with C.K. and Cael. (Id. at 37; Exh. C at 29.) Consequently, Petitioner never gave baths to

16 L.K.'s children, allowed them to sit on his lap, or went into their bedrooms alone at night.

17 (Exh. C at 29.)

18      While L.K. was still pregnant with Cael, Petitioner committed a drug possession

19 offense that ultimately resulted in him serving a 2.5-year prison term that commenced in

20 April 2000 and ended in September 2002. (Id. at 34-35; Exh. D at 7, 25, 176-77; Exh. E at

21 37-38, 41-42.) During Petitioner's imprisonment, L.K. continued with her education, found

22 full-time employment, and even purchased a house for the family. (Exh. D at 25-27; Exh. E

23 at 53.)

24      Until July 2005, when L.K. quit her job with Pacific Care to focus on finishing her

25 education, L.K. was the household's primary source of income, while Petitioner took care

26 of the children. (Exh. D at 9-13, 25, 29; Exh. E at 53, 75-77.) During the summer of 2005,

27 Petitioner found employment as a cabinet-maker and thus supported the family. (Exh. D at

28 26, 31, 181.)

1    Unbeknownst to L.K., sometime during the spring 2005, Petitioner began molesting

2    C.K. when she was 10-years-old. (<u>Id.</u> at 45-47, 51-52, 75, 79-80; Exh. C at 29-31, 36-46.)

3    C.K. could not remember specific dates of Petitioner's sexual misconduct or exactly how

4    many times Petitioner molested her. (Exh. D at 51, 59, 69, 75-76, 79-80, 147-49, 153.) C.K.

5    did not tell her mother that Petitioner was sexually abusing her because: (1) Petitioner told

6    her that both of them would be arrested and go to jail if anyone learned about their activities;

7    and (2) she was afraid that Petitioner would be forced to leave home and never see her again.

8    (<u>Id.</u> at 31-32, 57-58, 82, 97-100; Exh. C at 41-42.)

9    During trial, C.K. testified describing the specific incidents constituting the eighth

10   count set forth in the indictment. In sum, C.K. testified that Petitioner "touch[ed] [her]

11   inappropriately" by "rubbing [her] places he shouldn't be," specifically "[her] vagina." (Exh.

12   D at 49-50.) C.K. estimated that Petitioner inappropriately touched her on more than 10

13   separate occasions. (<u>Id.</u> at 79-80.) C.K. testified that Petitioner touched her vagina

14   underneath her clothes, "mostly [with] his hands," and with "his private part," which she

15   identified as his "penis." (<u>Id.</u> at 50-52.) When asked to specify where Petitioner molested her,

16   C.K. responded, "[m]ostly in my room," and that "[i]t happened there a lot." (<u>Id.</u> at 52, 54-57,

17   80.) C.K. also identified Petitioner's bedroom and the living room as the other places where

18   the molestation took place. (<u>Id.</u> at 53, 55-56, 79.) C.K. testified that the abuse happened

19   mostly at dark, only once during daytime hours, and while L.K. was "[m]ostly at work or

20   asleep or at the store." (<u>Id.</u> at 52, 55.) The last molestation episode occurred during the early

21   morning hours of Saturday, August 27, 2005, when L.K. discovered Petitioner in C.K.'s bed.

22   (<u>Id.</u> at 56-57, 85-91, 96-101, 112-13; Exh. C at 29-32, 36-47, 52.) Petitioner was

23   subsequently arrested on August 29, 2005.

24   At trial, testifying on his own behalf, Petitioner denied any sexual contact with C.K.

25   (Exh. E at 20-25, 35-37.) Petitioner presented evidence and argument to support his theory

26   that L.K. had fabricated the child-molestation allegations against him because: (1) Petitioner

27   had informed L.K. that he had entered an <u>Alford</u> plea to attempted child molestation in

28   connection with the 1985 incident involving T.D. (Exh. C at 16-17; Exh. D at 19-20; Exh.

1   E at 37, 95-96); (2) during their past arguments, Petitioner threatened to leave L.K. and take

2   their children with him (Exh. C at 16-17; Exh. D at 11-12, 18, 62-64, 179-80; Exh. E at 27,

3   38-39, 95-96); (3) Petitioner actually did take C.K. and Cael to a friend's house after at least

4   one of the arguments with L.K. (Exh. C at 16-17; Exh. D at 73-74, 185-87; Exh. E at 33-34,

5   95-96); and (4) L.K. and C.K. had an opportunity to discuss their allegations against

6   Petitioner before the police responded to their 911 call (Exh. D at 11-18, 63, 66, 73-77; Exh.

7   E at 95-96).

8          Regarding his prior convictions, Petitioner testified on direct-examination that: (1) he

9   was represented by counsel when he entered an _Alford_ plea to the attempted molestation

10  charge involving T.D. in 1985; (2) he went to prison for the molestation charge because he

11  violated probation; and (3) he went to prison between April 2000 and September 2002 for

12  his conviction for possession of narcotic drugs. (Exh. D at 176; Exh. E at 20-24, 37-42.) On

13  cross-examination, Petitioner admitted that he had three felony convictions in total. (Exh. E

14  at 39-42.)

15         The trial court found Petitioner guilty of Counts 2 through 8 as charged, but acquitted

16  him of Count 1. (Exh. B, Item 63; Exh. F at 7-8.) Before imposing sentence, the trial court

17  found that Petitioner had a predicate felony, based upon his trial testimony admitting his prior

18  conviction for attempted child molestation in 1985. (Exh. E at 20-21, 37, 39; Exh. G at 8.)

19  For Petitioner's six convictions for child molestation (Counts 2, 3, 5, 6, 7, and 8), the trial

20  court imposed six concurrent presumptive prison terms of 28 years. (Exh. B, Item 68; Exh.

21  G at 8-10.) After dismissing the predicate felony conviction, the trial court imposed lifetime

22  probation for Petitioner's sexual abuse conviction (Count 4). (Exh. B, Item 68; Exh. G at 11.)

23         On May 18, 2006, Petitioner filed a timely notice of appeal from the judgments and

24  sentences. (Exh. A, Item 69.) On March 23, 2007, Petitioner, by and through counsel, filed

25  with the Arizona Court of Appeals an opening brief raising two issues:

26         A. Did the trial court commit reversible error when it allowed the State to use
           propensity evidence under [Arizona] Rule [of Evidence] 404(c) for an offense
27         obtained by an _Alford_ plea over twenty years previously without making
           specific findings required by the Rules of Evidence?
28

B. Given that offense[s] under [A.R.S.] § 13-901.01 cannot be used to impeach an accused under *State ex re[l.] Romley v. Martin*, did the trial court err when it allowed the State to impeach [Petitioner] with two possession of drugs convictions?

(Exh. H at 8.) Petitioner amended the latter argument by contending in the body of his opening brief that the trial court also committed reversible error by failing to make any on-the-record finding, pursuant to Arizona Rule of Evidence 609(b), that the probative value of impeaching Petitioner with his 1985 conviction for attempted child molestation substantially outweighed the risk of unfair prejudice. (Id. at 16-17.)

On May 24, 2007, the State filed its answering brief, wherein it emphasized that Petitioner made a tactical decision not to object when the prosecution offered evidence of his prior molestation of T.D. because his trial theory was that L.K. had learned of this prior incident before she called the police and used this information to fabricate all the sexual-misconduct allegations in this case. (Exh. I.)

On July 3, 2007, Petitioner filed his reply brief, which not only reiterated his prior arguments that the trial court's failure to make on-the-record findings violated Rules 404(c) and 609(b), but also stated his intention to challenge his trial attorney's ineffectiveness for not objecting to this evidence in subsequent post-conviction relief proceedings. (Exh. J at 4-8.)

On December 20, 2007, the Arizona Court of Appeals issued a memorandum decision affirming his convictions and sentences. (Exh. K.) The decision stated, in pertinent part:

A. *Prior Child-Molestation Conviction*

¶ 3 Prior to trial, the State filed motions in which it announced its intention to introduce evidence of Davis' 1985 conviction for the attempted molestation of T. to impeach Davis, should he testify, and pursuant to Arizona Rule of Evidence ("Rule") 404(b). In the Joint Pretrial Statement, the State also disclosed its intention to present the testimony of T. as well as that of the probation officer who prepared Davis' presentence report in that case and a videotaped deposition of a police officer who questioned Davis during the investigation of the prior offense.

¶ 4 Davis did not object to the admission of any of this evidence. Rather, he now argues that the trial court erred in admitting the evidence because of its prejudicial nature and the unreliability of the testimony regarding the underlying facts given the age of the 1985 case. Specifically, he faults the court for not *sua sponte* rejecting the evidence pursuant to Rules 404 and 403.

¶ 5 Davis not only had ample notice of the State's intention to offer the evidence, the admission of the evidence served his purpose because his primary defense was that C.'s mother had used her knowledge of his prior child-molestation conviction to fabricate the current charges in an effort to coerce him into not leaving her and taking their children. His failure to object at trial served to forfeit any right to appellate relief absent fundamental error, *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005), and we find no such error because Davis, given notice of the State's intent to use the evidence, not only failed to object when the evidence was offered but appeared to have used the evidence to his advantage as part of his defense.

¶ 6 Davis disputes this analysis, contending that he did not waive the issue because he filed a post-trial motion for acquittal *in propria persona* in which he argued that the evidence was inadmissible and that, "despite repeated request[s]," his defense counsel did not respond to the State's Rule 404 motion. Davis was, however, represented by counsel when he filed his motion, and he is bound by his counsel's strategy not to challenge the evidence in furtherance of his defense. *See State v. Levato*, 186 Ariz. 441, 445, 924 P.2d 445, 449 (1996) (Defendant bound by counsel's intentional choice of trial strategy.)[.] There is no right to hybrid representation, and, therefore, Davis was not entitled to be heard independently of his counsel. *See State v. Cornell*, 179 Ariz. 314, 325, 878 P.2d 1352, 1363 (1994).

B. *Use of Prior Convictions/Impeachment*

¶ 7 Davis contends that the trial court improperly permitted the State to impeach him with not only the 1985 conviction but two convictions for the possession of drugs. Again, because he failed to object during trial to the use of the convictions for this purpose despite the State's specific notice of its intention to do so, we need only review for fundamental error, *Henderson*, 210 Ariz. at 569, ¶ 19, 115 P.3d at 607, and we find none.

¶ 8 Evidence of the 1985 conviction was properly admitted for the purpose stated above. Davis argues, though, that, because the conviction was more than twenty years old, it was incumbent upon the trial court to first find that the probative value of the evidence substantially outweighed its prejudice pursuant to Rule 609(b) before this conviction could be used for impeachment purposes. Davis never asked the court for such a ruling, however, when the State sought to use the 1985 conviction to impeach him, and the court is "presumed to know the law and apply it in making [its] decision[.]" *State v. Trostle*, 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997) (citation omitted). Absent any record to the contrary, we trust that the court engaged in the appropriate Rule 609 balancing even if it did not explicitly do so on the record.

¶ 9 Davis also contends that the trial court improperly considered his June 1999 (possession of marijuana) and November 1999 (possession of cocaine) convictions for impeachment purposes because they were "Proposition 200 offenses" that should not have been considered pursuant to *State ex rel. Romley v. Martin*, 205 Ariz. 279, 285, ¶ 24, 69 P.3d 1000, 1006 (2003) ("Proposition 200 convictions may not be used for impeachment purposes [pursuant to] Rule 609(a)(1)."). Again, Davis failed to make this complaint to the court, and our review thus is for the presence of fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. The record clearly shows (1) that the court recognized the marijuana conviction as a "Prop. 200" case

and (2) that Davis served a prison term of 2.5 years for the cocaine conviction so *Romley* did not bar the court's consideration of that offense.

### *CONCLUSION*

¶ 10 For the foregoing reasons, we affirm Davis' convictions and sentences.

(Exh. K at 2-5.)

Although the deadline for filing a petition for review expired on January 19, 2008, the Arizona Court of Appeals granted Petitioner's motion for an extension of time and gave him until February 25, 2008, to file his petition. (Exh. L.) Nevertheless, Petitioner let this extended deadline pass without filing a petition for review. On March 13, 2008, the Arizona Court of Appeals issued its order and mandate. (Exh. M.)

On January 24, 2008, and while his direct appeal was still pending, Petitioner filed a *pro per* notice of post-conviction relief. (Exh. N.) On August 11, 2008, appointed counsel filed a notice of completion of post-conviction review of the record avowing that he could not find any colorable claims to raise, and requesting an extension of time so that Petitioner could file a *pro per* petition for post-conviction relief. (Exh. Q; Exh. R.)

On November 24, 2008, Petitioner filed his *pro per* Rule 32 petition. (Exh. S.) In the first ground for relief, Petitioner alleged that his trial attorney rendered ineffective assistance because of the following omissions:

> (1) Counsel never moved to dismiss the indictment based on the fact that C.K.'s medical examination report indicated "no signs of any sexual contact." (Exh. S at 7-8.) Counsel also did not challenge the police interviewing C.K. outside his presence, allegedly in violation of Arizona Rule of Criminal Procedure 39(B)(1), (8), and (9). (Id.)
>
> (2) Counsel did not take any steps to ensure that the trial court complied with the procedural requirements of Arizona Rules of Evidence 404(c) and 609(b). (Id. at 9-10.)
>
> (3) Counsel did not advise Petitioner of the "serious ramifications of testifying" in light of the State's intention to impeach him with his prior convictions. (Id. at 10.)
>
> (4) Counsel did not "move to suppress" his prior conviction for attempted child molestation prior to trial. (Id.)
>
> (5) Counsel did not move to have Judge Hicks recuse herself because of her awareness of Petitioner's criminal history. (Id.)

(6) Counsel failed to conduct pretrial investigation and preparation "that would have reinforced Petitioner's assertion of innocence." (Id. at 11-12.) Petitioner did not specify the evidence that Counsel should have investigated or how his trial preparation was lacking. (Id.)

(7) Counsel did not challenge testimony "concerning Petitioner's 1984 conviction obtained by means of an *Alford* plea, from a person who could not identify Petitioner," ostensibly in reference to T.D., who could not identify him at this trial, due to the passage of nearly 20 years. (Id. at 12-13.)

(8) Counsel did not object when the State moved to amend the indictment at the close of its case to reflect a slightly expanded range of dates of commission for Counts 1 through 7. (Id. at 13-14.)

(9) Counsel did not object or request a mistrial when the State referred during its closing arguments certain "inadmissible hearsay evidence that the prosecution itself had motioned the court to preclude," to wit: Petitioner's self-serving statements during the confrontation call. (Id. at 14.)

(10) Counsel allegedly did not move for a judgment of acquittal at the close of the State's case or in a motion for new trial. (Id. at 14-15.)

In his second ground for post-conviction relief, Petitioner argued that the trial court committed reversible error when it failed to comply with the specific findings requirements of Rule 404(c)(1)(D) before admitting evidence relating to the prior molestation of T.D. – an omission that Petitioner contended violated his "6th and 14th Amendment rights to a fair trial, due process, and equal protection." (Id. at 16-19.)

In his third and final ground for post-conviction relief, Petitioner argued that the trial court committed reversible error because it did not comply with Rule 609(b)'s requirement of on-the-record findings before allowing the State to impeach him with his 1985 conviction for attempted child molestation – an omission that Petitioner contended "effectively created 6th and 14th amendment issues pertaining to fair trial, due process, and equal protection of the law." (Id. at 19-21.)

On January 26, 2009, the State filed its response to Petitioner's Rule 32 petition, wherein it argued that: (1) Petitioner's second and third claims were precluded under Arizona Rule of Criminal Procedure 32.2(a)(2), because Petitioner had raised them on direct appeal; and (2) none of Petitioner's ineffectiveness claims had merit. (Exh. T at 3-10.) On February 23, 2009, Petitioner filed his reply and reiterated all three claims for relief. (Exh. U.) On

March 4, 2009, the trial court denied Petitioner's "*pro per* petition for post-conviction relief, for the reasons stated in the State's Response thereto." (Exh. V.)

On June 17, 2009, Petitioner filed a petition for review to the Arizona Court of Appeals. (Exh. W.) Petitioner raised the following arguments:

> (1) The trial court denied relief without "making a full factual determination on any of the issues presented in Petitioner's Rule 32 petition, as is required by law under [Arizona] Rule [of Criminal Procedure] 32.6(c)" and *Townsend v. Sain*, 372 U.S. 293 (1963). (Id. at 3-4.)

> (2) The trial court committed "structural error" because it ignored the legislative intent underlying Arizona Rules of Evidence 403 and 404(c) and admitted evidence of his prior molestation of T.D. in 1984 without first making the requisite findings prescribed by Rule 404(c)(1)(D) – an omission that he characterized as a violation of "his right to a fair trial and his right to due process," but without specifying the federal constitution as the basis for these claims. (Id. at 5-8.)

> (3) The trial court "committed plain and structural error" when it admitted evidence of his 1985 prior conviction for attempted child molestation without first making an on-the-record factual finding that its probative value outweighed its prejudicial impact, as required by "Federal Rule [of Evidence] 609(b)." (Id. at 8-10.) "This abuse of discretion by the trial court did result in a structural error that denied Petitioner's right to a fair trial and right to due process" and "rendered the entire adversarial process fundamentally unfair." (Id. at 10.)

> (4) Petitioner's trial attorney rendered ineffective assistance, based on the same 10 omissions listed in his Rule 32 petition for post-conviction relief. (Id. at 10-18.)

On August 25, 2010, the Arizona Court of Appeals summarily denied review. (Exh. X.) On September 10, 2011, Petitioner filed a petition for review by the Arizona Supreme Court, which raised the same four claims as the petition for review he filed with the Arizona Court of Appeals. (Doc. 1-1 at 22-32.) Respondents' Answer indicates that on February 17, 2011, the Arizona Supreme Court summarily denied review. (Doc. 12.)

In January 2011, Petitioner filed a petition for writ of habeas corpus in Pima County Superior Court. (Exh. Y.) The pleading was subsequently returned to Petitioner because the pleading was filed in the wrong county court. (Id.) Specifically, the Clerk of the Superior Court of Pima County stated, "Pima County does not have jurisdiction on this case. Need to file in Maricopa County. Please do not send back to us." (Id.)

On March 29, 2011, Petitioner filed with the Arizona Supreme Court a *pro per* application seeking state habeas relief on the following issue: "[D]id Maricopa County

Superior Court lack subject matter jurisdiction to convene any criminal proceedings or assemble a forum in the case at bar, due to a fatally flawed indictment?" (Id. at 6.) Petitioner contended that the following alleged defects rendered the indictment legally insufficient to confer jurisdiction in Maricopa County Superior Court:

> (1) The phrase "by engaging in sexual contact" employed in Counts 1, 2, 3, 5, 6, 7, and 8 could refer to "any number of alleged situational contacts" and therefore was too vague to identify the elements of the charges and satisfy Arizona Rule of Criminal Procedure 13.2(a)'s requirement that the charging document contain "plain, concise mandatory statements of fact." (Id. at 7-8.)

> (2) The indictment "does not list the necessary elements of an offense," an omission that made it difficult to identify the conduct underlying each count and impeded Petitioner's ability to prepare his defense and protect himself against double jeopardy. (Id. at 8-10.)

> (3) The indictment "contains multiplicitous information" and consequently charged Petitioner with the same crime in multiple counts. (Id. at 10-11.)

> (4) The repetition of charges and absence of detailed factual assertions "provides no double jeopardy protection" for Petitioner. (Id. at 12.)

Based on the foregoing allegations, Petitioner concluded his state habeas petition as follows:

> The absence of statement of facts, physical components, factual situations, or specified specific elements has directly resulted in the replication of counts. Because of the ambiguity created by the deficiencies drafted into the indictment, it is absent any of the mandated double jeopardy protections. Therefore, the Maricopa County Superior Court lacked subject matter jurisdiction to convene any criminal proceedings or assemble a forum in this matter.

(Id. at 13.)

On June 27, 2011, the Arizona Supreme Court issued the following order:

> Petitioner Carl Dwight Davis has filed a Petition for Writ of Habeas Corpus challenging the validity of his convictions and sentences, specifically alleging that the superior court lacked subject matter jurisdiction because the indictment was defective. A.R.S. Section 13-4233 and Rule 32.3, Ariz. R. Crim. P., provide that Rule 32 procedures govern such claims. Such claims must be presented initially to the superior court, and if relief is denied, then to the Court of Appeals in a timely petition for review. See Rules 32.3 and 32.9(c), Ariz. R. Crim. P.; Supreme Court Rule 1(b)(1). If the Court of Appeals denies review or relief, Rules 32.9(g) and 31.19 allow for the filing of a timely petition for review by this Court. Therefore,

> IT IS ORDERED that the Petition for Writ of Habeas Corpus and Waiver for Good Cause are dismissed.

1   (Doc. 1-2 at 7.)

2        On July 6, 2011, Petitioner filed a motion for reconsideration, arguing that the Arizona

3   Supreme Court had misconstrued his habeas petition as a mislabeled Rule 32 petition,

4   because he was merely challenging "Maricopa County Superior Court's [lack of] original

5   jurisdiction." (Exh. Z at 1-2.)

6        On September 12, 2011, the court issued an order that summarily denied the motion

7   for reconsideration. (Doc. 1-2 at 8.)

8        On March 16, 2011, Petitioner filed his second *pro per* notice of post-conviction

9   relief. (Exh. AA.) On May 3, 2011, the trial court dismissed the notice because Petitioner had

10  not satisfied the procedural prerequisites for filing a successive Rule 32 petition. (Exh. BB.)

11  The court stated, in pertinent part:

12       The Court has reviewed defendant's Notice of Post-Conviction Relief filed
         March 11, 2011. Following a trial by jury, defendant was sentenced on May
13       17, 2006 and he appealed. The Arizona Court of Appeals issued its order and
         mandate affirming the defendant's convictions and sentences on March 18,
14       2008. This is defendant's second Rule 32 proceeding and it is untimely filed.

15       Defendant fails to raise any claims in his Notice. Additionally, defendant
         offers no facts, evidence, affidavits, or records to support any claims that could
16       be raised in a Rule 23 [sic] proceeding, as required by Rule 32.5, Ariz. R.
         Crim. P.
17
         A defendant must comply strictly with Rule 32 by asserting substantive
18       grounds which bring him within the provisions of the Rule in order for the
         Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320
19       (1984). Defendant fails to state a claim for which relief can be granted in an
         untimely Rule 32 proceeding. Rule 32.4(a).
20
         The defendant also files a "Motion to Extend or Stay or Timeframe for Filing
21       Rule 32 Petition," and a "Motion to Compel Production of Trial Files." Good
         Cause appearing,
22
         IT IS ORDERED dismissing defendant's Notice of Post-Conviction Relief and
23       other motions.

24  (Id.)

25       Thereafter, Petitioner filed no pleadings with any state court following the dismissal

26  of his second notice of post-conviction relief.

27       On January 20, 2012, Petitioner filed the instant habeas petition raising four grounds

28  for relief:

- 13 -

**Ground One:** whether alleged deficiencies in the indictment rendered the Maricopa County Superior Court without subject matter jurisdiction to try Petitioner for these offenses. (Doc. 1 at 6-7.)

**Ground Two:** whether Petitioner's trial attorney rendered ineffective assistance, based on the following omissions: (a) Counsel failed "entirely to subject [Petitioner's] case to a meaningful adversarial testing" (Id. at 8); (b) Counsel "failed to investigate the lack of any medical or scientific evidence to support any of the allegations charged" (Id.); (c) Counsel "did not object to or challenge the admission of evidence which first, by law required mandatory evidentiary hearings be held" under Arizona Rules of Evidence 404(c) and 609(b) (Id.); (d) Counsel "did not challenge the constructive amendment of the indictment by the trial judge who was the finder of fact" (Id.); (e) Counsel "did not object to, challenge, or request a mistrial when the prosecution, in its closing, introduced evidence previously deemed as inadmissible hearsay and precluded by the trial judge" (Id.); (f) Counsel "did not motion for an acquittal or new trial based on insufficient or the absence of any evidence to sustain a verdict" (Id.); and (g) Counsel's "deficient representation is raised and noted in the [Arizona Court of Appeals'] memorandum decision," wherein the appellate court found that the trial court did not commit fundamental error with respect to Petitioner's claims regarding evidence admitted under Rules 404(c) and 609(b) (Id.).

**Ground Three:** whether the trial court violated Petitioner's Fourteenth Amendment rights to due process and a fair trial by: (a) admitting evidence that Petitioner had molested another child, pursuant to Arizona Rule of Evidence 404(c), without first conducting an evidentiary hearing or making the specific findings enumerated in Rule 404(c)(1)(D) (Ground III(a)); and (2) allowing the State to impeach him with his 1985 conviction for attempted child molestation, pursuant to Arizona Rule of Evidence 609(b), without making the on-the-record finding that the probative value of this 20-year-old conviction substantially outweighed the danger of unfair prejudice (Ground III(b)). (Id. at 10-11.)

**Ground Four:** Petitioner is actually innocent of the crimes for which he was convicted. (Id. at 12.)

Respondents filed an Answer (Doc. 12), and Petitioner filed a Traverse and memorandum in support thereof (Docs. 16, 17).

## DISCUSSION

In their Answer, Respondents contend that Ground One is procedurally defaulted; Ground Four fails to state a basis for federal habeas relief; and Grounds Two and Three fail on the merits. As such, Respondents request that the Court deny and dismiss Petitioner's habeas petition with prejudice.

**A.    Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To

1   properly exhaust state remedies, a petitioner must fairly present his claims to the state's

2   highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S.

3   838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona

4   Court of Appeals by properly pursuing them through the state's direct appeal process or

5   through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th

6   Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

7          Proper exhaustion requires a petitioner to have "fairly presented" to the state courts

8   the exact federal claim he raises on habeas by describing the operative facts and federal legal

9   theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78

10  (1971) ("[W]e have required a state prisoner to present the state courts with the same claim

11  he urges upon the federal courts."). A claim is only "fairly presented" to the state courts

12  when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim

13  under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)

14  (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner

15  fails to alert the state court to the fact that he is raising a federal constitutional claim, his

16  federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

17         A "general appeal to a constitutional guarantee," such as due process, is insufficient

18  to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518

19  U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005)

20  ("Exhaustion demands more than drive-by citation, detached from any articulation of an

21  underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because

22  its factual basis was presented to the state courts on state law grounds – a "mere similarity

23  between a claim of state and federal error is insufficient to establish exhaustion." Shumway,

24  223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

25         Even when a claim's federal basis is "self-evident," or the claim would have been

26  decided on the same considerations under state or federal law, a petitioner must still present

27  the federal claim to the state courts explicitly, "either by citing federal law or the decisions

28  of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted),

amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (DATE). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[3] and "adequate"[4] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily

---

[3] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[4] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

1  not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)

2  and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

3      Moreover, if a state court applies a procedural bar, but goes on to alternatively address

4  the merits of the federal claim, the claim is still barred from federal review. See Harris v.

5  Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of

6  a federal claim in an *alternative* holding. By its very definition, the adequate and independent

7  state ground doctrine requires the federal court to honor a state holding that is a sufficient

8  basis for the state court's judgment, even when the state court also relies on federal law. ...

9  In this way, a state court may reach a federal question without sacrificing its interests in

10  finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580

11  (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as

12  here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S.

13  at 264 n.10).

14      Furthermore, a subsequent "silent" denial of review by a higher court simply affirms

15  a lower court's application of a procedural bar. See Ylst, 501 U.S. at 803 ("where ... the last

16  reasoned opinion on the claim explicitly imposes a procedural default, we will presume that

17  a later decision rejecting the claim did not silently disregard that bar and consider the

18  merits").

19      A procedural bar may also be applied to unexhausted claims where state procedural

20  rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred

21  from habeas review when not first raised before state courts and those courts "would now

22  find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.

23  2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only

24  when a state court has been presented with the federal claim,' but declined to reach the issue

25  for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally

26  barred.'") (quoting Harris, 489 U.S. at 263 n.9).

27      In Arizona, claims not previously presented to the state courts via either direct appeal

28  or collateral review are generally barred from federal review because an attempt to return to

state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because Arizona's preclusion rule (Rule 32.2(a)) is both "independent" and "adequate," either its specific application to a claim by an Arizona court, or its operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of that claim by a federal habeas court. See Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly

present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

In Ground One, Petitioner claims that "Maricopa County Superior Court lacked subject matter jurisdiction due to the charging instrument being facially deficient and fatally flawed," and that "a (defective) deficient indictment will provide [a] basis for federal habeas relief if [the] defect is significant." (Doc. 1 at 6.) Petitioner asserts that the indictment contained the following "significant" defects: (1) it did not "sufficiently state [an] offense," (2) it did not comply with the Arizona Rule of Criminal Procedure's requirement that the indictment be a "plain, concise, and definite written statement of essential facts constituting the offense charged," (3) it was not specific and failed to allege all essential elements of the charged offenses, and (4) it alleged the commission of the same crime in multiple counts and was therefore impermissibly "multiplicitous" and in violation of the "5[th] Amendment Double Jeopardy Clause." (Id.)

Petitioner did not raise the claims set forth in Ground One on direct appeal, or in either of his two Rule 32 proceedings. (Exhs. H, J, K, S, U, W, AA, BB.) Instead, Petitioner presented his lack-of-subject-matter-jurisdiction claim and its various sub-components, first to the Pima County Superior Court, and later to the Arizona Supreme Court via a pleading entitled, "Application for issuance of a writ of habeas corpus."[5] (Exh. Y.)

The Pima County Superior Court rejected and returned Petitioner's application for writ of habeas corpus because he had been tried and convicted in Maricopa County Superior

---

[5] These sub-components alleged that: (1) the indictment's reference to "engaging in sexual conduct" did not satisfy Rule 13.2(a)'s requirement that the charging document contain "plain, concise mandatory statements of fact," (2) each child-molestation charge "does not list the necessary elements of an offense," which allegedly made it difficult to identify the conduct at issue and impeded his ability to prepare his defense; (3) the indictment was "multiplicitous" because it charged Petitioner with the same crime in multiple counts; and (4) the alleged repetition of charges and absence of detailed factual assertions "provides no double jeopardy protection." (Exh. Y at 7-12.)

Court, and thus it lacked jurisdiction. (Id.) And, as previously indicated, the Arizona Supreme Court dismissed Petitioner's application for state habeas relief, stating:

> Petitioner Carl Dwight Davis has filed a Petition for Writ of Habeas Corpus challenging the validity of his convictions and sentences, specifically alleging that the superior court lacked subject matter jurisdiction because the indictment was defective. A.R.S. Section 13-4233 and Rule 32.3, Ariz. R. Crim. P., provide that Rule 32 procedures govern such claims. Such claims must be presented initially to the superior court, and if relief is denied, then to the Court of Appeals in a timely petition for review. See Rules 32.3 and 32.9(c), Ariz. R. Crim. P.; Supreme Court Rule 1(b)(1). If the Court of Appeals denies review or relief, Rules 32.9(g) and 31.19 allow for the filing of a timely petition for review by this Court. Therefore,
>
> IT IS ORDERED that the Petition for Writ of Habeas Corpus and Request from Waiver for Good Cause are dismissed.

(Doc. 1-2 at 7.) The Arizona Supreme Court subsequently denied Petitioner's motion for reconsideration. (Exh. Z; Doc. 1-2 at 8.)

Thus, Petitioner did not satisfy the "fair presentation" requirement by advancing Ground One in his state habeas petition. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding that the submission of a new claim to a State's highest court on discretionary review does not constitute fair presentation); Casey v. Moore, 386 F.3d 896, 917 (9th Cir. 2004) ("Because Petitioner's federal claims were raised for the first time in [a discretionary motion for reconsideration,] the Washington Supreme Court would have been within its discretion simply to deny the motion or to dismiss it without comment.") (quoting Lambert v. Greene, 288 F.3d 1081, 1087 (9th Cir. 2002)); Roettgen, 33 F.3d at 38 (holding that presentation of federal claims to Arizona appellate courts in petitions for special-action review does not satisfy the exhaustion requirement, because "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation"). Moreover, Petitioner would no longer have a remedy if he returned to state court. See Ariz. R. Crim. P. 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar). As a result, his claims are procedurally defaulted.

Having procedurally defaulted Ground One, the Court will not consider the merits of his claims unless Petitioner establishes cause for his noncompliance and actual prejudice, or

demonstrates that a miscarriage of justice would result. In his traverse and memorandum in support thereof, Petitioner reargues the merits of his claims, contends that the Pima County Superior Court and Arizona Supreme Court should have addressed the merits, and "submits there is no procedural default." (Docs. 16, 17.) However, Petitioner fails to establish any sufficient basis to overcome the procedural bar. Petitioner has not shown cause or prejudice to excuse the procedural default. Further, to the extent Petitioner's claim alleged in Ground Four (free standing claim of actual innocence) could be construed as an attempt to circumvent his procedural default via the actual-innocence gateway, Petitioner's claim fails.

A gateway "actual innocence" claim differs from a substantive actual innocence claim. See Smith v. Baldwin, 466 F.3d 805, 811-12 (9th Cir. 2006) (overruled on other grounds). The Supreme Court described the gateway showing in Schlup, 513 U.S. at 315-16, as a less stringent standard than a substantive claim of actual innocence. See Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (suggesting that a "habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is innocent"). Still, the fundamental-miscarriage-of-justice exception applies only to a "narrow class of cases" in which a petitioner makes the extraordinary showing that an innocent person was probably convicted due to a constitutional violation. See Schlup, 513 U.S. at 331.

To demonstrate a fundamental miscarriage of justice, Petitioner must show that "a constitutional violation has resulted in the conviction of one who is actually innocent." Id. at 327. To establish the requisite probability, Petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. New evidence presented in support of a fundamental miscarriage of justice may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." Id. at 324; see House v. Bell, 547 U.S. 518 (2006) (stating that a fundamental-miscarriage-of-justice contention must involve evidence that the trial jury did not have before it).

1      Petitioner has failed to present any "new" evidence, and instead relies exclusively on

2  what the trial court previously considered during the bench trial. Moreover, Petitioner's

3  testimony and conclusory, unsworn assertions set forth in his habeas petition stating that he

4  never sexually abused C.K. are insufficient to carry his burden of proving that "it is more

5  likely than not that no reasonable juror would have convicted him in light of the new

6  evidence presented in his habeas petition." Calderon v. Thompson, 523 U.S. 538, 559 (1998);

7  see, e.g., Hubbard v. Pinchak, 378 F.3d 333, 340 (3rd Cir. 2004) ("The only evidence that

8  Hubbard asserts is 'new' is what he terms as 'his own sworn testimony.' … A defendant's

9  own late-proffered testimony is not 'new' because it was available at trial. Hubbard merely

10  chose not to present it to the jury. That choice does not open the gateway."); Weeks v.

11  Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997) ("Weeks only gives his word that he is

12  innocent and that he can produce evidence to prove it. Weeks's bare, conclusory assertion

13  that he is actually innocent is not sufficient to invoke the exception. 'Were protestation of

14  innocence the only prerequisite to application of this exception, we fear that actual innocence

15  would become a gateway forever open to habeas petitioners' defaulted claims.'"); Thomas

16  v. Goldsmith, 979 F.2d 746, 750 (9th Cir. 1992) ("Thomas' bare allegations, unsupplemented

17  by evidence, do not tend to establish his actual innocence sufficiently for the court to ignore

18  that default."). Thus, Petitioner has not established that, in light of newly discovered

19  evidence, "it is more likely than not that no reasonable juror would have found petitioner

20  guilty beyond a reasonable doubt." Schlup, 513 U.S. at 324, 327.

21      Because Petitioner has not established any basis to excuse his procedural default,

22  Petitioner's claims asserted in Ground One are barred from habeas corpus review. The Court

23  will recommend that Ground One be denied and dismissed.

24  **B.    Non-Cognizable Claim**

25      In Ground Four, Petitioner contends that he is actually innocent. (Doc. 1 at 12.)

26      The United States Supreme Court has not held that a "freestanding" claim of factual

27  innocence, i.e., one unaccompanied by a substantive claim of constitutional error in trial

28  proceedings, provides a basis for federal habeas relief in a non-capital case. See Herrera v.

1   Collins, 506 U.S. 390, 417 (1993); see also District Attorney's Office v. Osborne, 557 U.S.

2   52, 71-74 (2009). The Supreme Court has not decided whether a persuasive demonstration

3   of actual innocence after trial would render unconstitutional a conviction and sentence that

4   is otherwise free of constitutional error. See House, 547 U.S. at 554-55.

5          The Court has established, however, that the threshold for any such claim, if it were

6   recognized, would be "extraordinarily high." Herrera, 506 U.S. at 417. The threshold, if it

7   exists, would require "more convincing proof" than the "gateway" standard that allows for

8   consideration of otherwise defaulted constitutional claims upon a showing of actual

9   innocence. See House, 547 U.S. at 555; see also Schlup, 513 U.S. at 315. Thus, on a

10  freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that

11  it is "more likely than not that no reasonable juror would have found petitioner guilty beyond

12  a reasonable doubt." Schlup 513 U.S. at 327. Rather, "to be entitled to relief, a habeas

13  petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt

14  about his guilt, and must affirmatively prove that he is probably innocent." Carriger, 132

15  F.3d at 476. A finding of "actual innocence" is not to be based upon a finding that

16  insufficient evidence to support the charge was presented at trial, but rather upon affirmative

17  evidence of innocence. See U.S. v. Ratigan, 351 F.3d 957 (9th Cir. 2003).

18         As this Court has previously demonstrated related to Petitioner gateway actual

19  innocence claim, Petitioner has failed to present any "new" evidence. Instead, he appears to

20  rely entirely on the evidence presented at trial and his own conclusory, unsworn assertions

21  stating that he never sexually abused C.K. As this evidence is insufficient to satisfy the

22  Schlup gateway standard, it also cannot meet the extraordinarily high evidentiary standard

23  to establish a substantive claim of actual innocence. See House, 547 U.S. at 555 ("The

24  sequence of the Court's decisions in Herrera and Schlup – first leaving unresolved the status

25  of freestanding claims and then establishing the gateway standard – implies at the least that

26  Herrera requires more convincing proof of innocence than Schlup. It follows, given the

27  closeness of the Schlup question here, that House's showing falls short of the threshold

28  implied in Herrera.").

1    Thus, the Court will recommend that Ground Four be denied and dismissed.

2    **C.    Merits**

3    Pursuant to the AEDPA[6], a federal court "shall not" grant habeas relief with respect

4    to "any claim that was adjudicated on the merits in State court proceedings" unless the state

5    court decision was (1) contrary to, or an unreasonable application of, clearly established

6    federal law as determined by the United States Supreme Court; or (2) based on an

7    unreasonable determination of the facts in light of the evidence presented in the state court

8    proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)

9    (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard

10   of review). "When applying these standards, the federal court should review the 'last

11   reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

12   A state court's decision is "contrary to" clearly established precedent if (1) "the state

13   court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

14   or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

15   decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

16   precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an

17   'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule

18   but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)

19   extends or fails to extend a clearly established legal principle to a new context in a way that

20   is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

21   **1.    Ground Two**

22   In Ground Two, Petitioner claims that his trial counsel rendered ineffective assistance,

23   based on the following omissions: (a) Counsel failed "entirely to subject [Petitioner's] case

24   to a meaningful adversarial testing" (Doc. 1 at 8); (b) Counsel "failed to investigate the lack

25   of any medical or scientific evidence to support any of the allegations charged" (Id.); (c)

26   Counsel "did not object to or challenge the admission of evidence which first, by law

27

28

---

[6] Antiterrorism and Effective Death Penalty Act of 1996.

required mandatory evidentiary hearings be held" under Arizona Rules of Evidence 404(c) and 609(b) (Id.); (d) Counsel "did not challenge the constructive amendment of the indictment by the trial judge who was the finder of fact" (Id.); (e) Counsel "did not object to, challenge, or request a mistrial when the prosecution, in its closing, introduced evidence previously deemed as inadmissible hearsay and precluded by the trial judge" (Id.); (f) Counsel "did not motion for an acquittal or new trial based on insufficient or the absence of any evidence to sustain a verdict" (Id.); and (g) Counsel's "deficient representation is raised and noted in the [Arizona Court of Appeals'] memorandum decision," wherein the appellate court found that the trial court did not commit fundamental error with respect to Petitioner's claims regarding evidence admitted under Rules 404(c) and 609(b) (Id.).

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

In reviewing a state court's resolution of an ineffective assistance of counsel claim, the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.") (citations omitted).

### a.    Ground II(a)

Petitioner contends that Counsel failed "entirely to subject [Petitioner's] case to a meaningful adversarial testing." (Doc. 1 at 8.) Petitioner raised this contention in his Rule

32 petition, but failed to specify what investigative leads were not explored or how Counsel's trial preparation was lacking. (Exh. S at 11-12.) In denying relief, the trial court adopted the following rationale articulated in the State's response to his Rule 32 petition:

> Petitioner summarily contends that trial counsel rendered ineffective assistance because he failed to investigate and to adequately conduct pre-trial preparation "that would have re-inforced petitioner's assertion of innocence." Petitioner, however, utterly fails to explain what evidence any additional investigation or preparation would have produced, so he cannot establish either deficient performance or actual prejudice. On the contrary, the record of counsel's performance in examining and cross-examining the witnesses at trial demonstrates counsel's preparedness and knowledge of the case.

(Exh. T at 8-9; Exh. V) (internal citation omitted).

The trial court's ruling was neither contrary to, nor an unreasonable application of federal law. Among other things, the record demonstrates that Counsel: (1) argued Petitioner's innocence during his opening statement and closing argument (Exh. C at 16-18; Exh. E at 94-99); (2) elicited testimony to advance his theory that L.K. had fabricated the sexual allegations, based on her knowledge of Petitioner's plea to attempted child molestation in 1985 (Exh. D at 7-20, 61-74, 179-88; Exh. E at 25-39); (3) offered evidence suggesting that Petitioner had entered this plea because he was innocent but feared being wrongly convicted (Exh. D at 7-20, 41-44, 109-11; Exh. E at 19-24); (4) cross-examined the State's witnesses (Exh. D at 7-20, 41-44, 61-74, 91-92, 102-03, 109-11, 126-28, 154-58, 170-71; Exh. E at 78-81); (5) moved for a directed verdict of acquittal (Exh. D at 173); (6) called Petitioner to testify on his own behalf (id. at 173-90; Exh. E at 10-39, 61-69); and (7) objected numerous times during trial to the State's evidence, motions, and arguments (Exh. C at 25, 28, 40, 41, 50, 51; Exh. D at 27, 87, 89, 99, 115, 151, 171-72; Exh. E at 72, 73, 74, 75-76, 77, 99).

These actions on Petitioner's behalf demonstrate Counsel's knowledge and preparation and, any claim that Counsel failed "entirely to subject [the State's] case to a meaningful adversarial testing," is not persuasive. See Bell, 535 U.S. at 696-97 ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete.") (citing

1   United States v. Cronic, 466 U.S. 648, 659 (1984)); Hooks v. Workman, 606 F.3d 715, 725

2   (10th Cir. 2010) ("Because the record in this case demonstrates trial counsel did not 'fail[ ]

3   to oppose the prosecution throughout the [trial] as a whole,' *Cronic* does not apply.")

4   (quoting Bell, 535 F.3d at 697); Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990) ("In

5   addition, counsel's performance throughout the trial demonstrates sufficient preparation and

6   knowledge of the case that 'falls within the wide range of reasonable professional

7   assistance.'") (quoting Strickland, 466 U.S. at 689).

8          Furthermore, without a specific, affirmative showing of what the missing evidence or

9   testimony would have been, "a habeas court cannot even begin to apply *Strickland's*

10  standards' because 'it is very difficult to assess whether counsel's performance was deficient,

11  and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies

12  in counsel's performance.'" Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting

13  United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)). See Bible v. Ryan,

14  571 F.3d 860, 871 (9th Cir. 2009) (collecting cases holding that "speculation is not sufficient

15  to establish prejudice" in the ineffective assistance context); Jones v. Gomez, 66 F.3d 199,

16  205 (9th Cir. 1995) (finding that petitioner's conclusory allegations made "[w]ithout reference

17  to the record or any document" were insufficient to state a basis for habeas relief); James v.

18  Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a

19  statement of specific facts do not warrant habeas relief.").

20          **b.      Ground II(b)**

21          Petitioner contends that Counsel "failed to investigate the lack of any medical or

22  scientific evidence to support any of the allegations charged." (Doc. 1 at 8.) In essence,

23  Petitioner claims that Counsel was ineffective by failing to file a pre-trial motion to dismiss

24  the charges against him in light of the lack of medical or scientific evidence. (Id.) Petitioner

25  raised this contention in his Rule 32 petition, but failed to specify the evidence or potential

26  experts his attorney could have produced to show that C.K. exhibited "no signs of any sexual

27  contact." (Exh. S at 7-8.) In denying relief, the trial court adopted the rationale articulated

28  in the State's response to his Rule 32 petition:

Petitioner contends that trial counsel rendered ineffective assistance by failing to file a pre-trial motion to dismiss the charges against him based on the fact that the victim's medical examination report indicated "no signs of any sexual contact." Petitioner has failed to establish either prong of the *Strickland* test. First, Petitioner was charged with child molestation and sexual abuse, both of which by definition require proof of touching, fondling, or manipulation but not penetration. Testimony was presented at the bench trial that touching, fondling, or manipulation of the victim's genital area would not leave any medical evidence. Therefore, counsel had no basis on which to file a pretrial motion to dismiss the charges due to insufficient evidence. Second, Petitioner cites no authority to support his implication that the trial court has the power to entertain a motion – made in the pretrial stages of a criminal proceeding – to dismiss the charges based on insufficient evidence. In any event, at the close of evidence at trial, the trial court denied counsel's motion for judgment of acquittal under Rule 20, Ariz. R. Crim. P.

(Exh. T at 6-7; Exh. V) (internal citations omitted).

The Court finds that Petitioner has failed to demonstrate deficient performance and, as such, the trial court's rejection of this claim was neither contrary to, nor an unreasonable application of federal law. First, any argument that trial counsel should have moved to dismiss the charges before trial, based on the absence of corroborating medical or scientific evidence, finds no support in Arizona law.[7] The Sixth Amendment did not require Counsel to make a groundless pretrial motion to dismiss. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Ceja v. Stewart, 97 F.3d 1246, 1253 (9th Cir. 1996). Further, the record reflects that Counsel did move for a directed verdict of acquittal after the State had rested without offering any medical evidence to corroborate C.K.'s allegations. (Exh. D at 173.)

Second, any allegation regarding Counsel's decision not to investigate medical or scientific evidence is unavailing since: (1) the production of medical evidence showing that C.K. had no vaginal injury would not preclude the State from proving the charged offenses of child molestation and sexual abuse, which required proof that Petitioner had sexual contact

---

[7] See State v. Barnett, 101 P.3d 646, 647 n.2 (Ariz. App. 2004) ("We note that Rule 16.6(b), Ariz. R. Crim. P., 16A A.R.S., allows a dismissal on a defendant's [pretrial] motion [to dismiss] only if the trial court finds that the indictment is insufficient as a matter of law."); State v. Rickard-Hughes, 895 P.2d 1036, 1038 (Ariz. App. 1995) ("Rule 16.6(b) is not the proper procedural means for a dismissal when the trial judge believes the evidence against the defendant is insufficient to go to the jury. Weighing the evidence before trial is not appropriate.").

with C.K.; (2) Petitioner told L.K. during the tape-recorded confrontation call that he had rubbed his penis against over C.K.'s clothing, and that L.K. need not take C.K. to the hospital because "nothing happened to that extreme" (Exh. E at 93-94); (3) C.K.'s testimony describing Petitioner's sexual abuse indicated that he never penetrated her vagina so as to cause injury (id. at 94; Exh. D at 52-58, 80; Exh. CC at 5-12); and (4) the State's pretrial disclosure to Counsel included a medical report indicating that C.K.'s forensic examination revealed that she was "normal" and had no injuries – a report that was admitted into evidence at trial by stipulation of both parties (Exh. C at 7-8; Exh. E at 93-94; Exh FF).

### c.    Grounds II(c) and II(g)

Petitioner contends that Counsel "did not object to or challenge the admission of evidence which first, by law required mandatory evidentiary hearings be held" under Arizona Rules of Evidence 404(c) and 609(b). (Doc. 1 at 8.) Petitioner also alleges the related (if not identical) claim that Counsel's "deficient representation is raised and noted in the [Arizona Court of Appeals'] memorandum decision," wherein the appellate court found that the trial court did not commit fundamental error with respect to Petitioner's claims regarding evidence admitted under Rules 404(c) and 609(b) – specifically, Petitioner's 1985 conviction for committing the crime of attempted child molestation against T.D. (Id.) In denying relief, the trial court adopted the rationale articulated in the State's response to his Rule 32 petition:

> Petitioner contends that trial counsel rendered ineffective assistance by failing to address the trial court's application of Rule 404(c) and Rule 609. On direct appeal, the Arizona Court of Appeals addressed and rejected Petitioner's substantive claims involving Rules 404 and 609, and found no error. Thus, Petition cannot demonstrate a reasonable probability that the verdict might have been affected by this non-error.

(Exh. T at 7; Exh. V) (internal citations omitted).

Counsel's decision not to object to the court admitting evidence regarding the 1985 conviction for attempted child molestation constituted a reasonable tactical decision – not constitutionally deficient performance. As the Arizona Court of Appeals reasoned while upholding Petitioner's convictions on direct appeal, "the admission of the evidence served [Petitioner's] purpose because his primary defense was that C.'s mother had used her

knowledge of his prior child-molestation conviction to fabricate the current charges in an effort to coerce him into not leaving her and taking their children." (Exh. K at 3.) Thus, the court of appeals concluded that Petitioner "used the evidence to his advantage as part of his defense." (Id.) Disagreements regarding trial tactics or strategy cannot form the basis for a claim of ineffective assistance of counsel. See Strickland, 466 U.S. at 690; People of Territory of Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984) (stating that a "tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel"). As such, Petitioner has failed to demonstrate deficient performance.

Accordingly, the Court finds that the state court's decision was not contrary to clearly established federal law.

### d.    Ground II(d)

Petitioner contends that Counsel "did not challenge the constructive amendment of the indictment by the trial judge who was the finder of fact." (Doc. 1 at 8.) In denying relief, the trial court adopted the rationale articulated in the State's response to his Rule 32 petition:

> Petitioner's contention that trial counsel failed to object to the State's motion to amend the indictment is simply not supported by the record. Counsel's objection to the State's motion to amend the indictment was denied by the trial court.

(Exh. T at 9; Exh. V) (internal citations omitted).

The record reflects that Counsel responded to the State's motion to enlarge the range of dates for Counts 1 through 7 as follows:

> Judge, of course I would object to it. We have a long range bullseye here, if I recall correctly, January, February and I think part of what's considered winter. So I think spring break would be sometime in the spring. So I would object to moving to amend the complaint or indictment.
>
> Also, Judge, for the record, May is in the spring and who knows when spring break was from that school. We never established that.

(Exh. D at 172.)

Thus, Petitioner having challenged the amendment of the indictment, cannot establish deficient performance.

In any event, Arizona Rule of Criminal Procedure 13.5(b) permits the prosecution to amend the indictment at trial to reflect a different date for the charged offense. See State v. Jones, 937 P.2d 1182, 1192 (Ariz. App. 1996) ("An error as to the date of the offense alleged in the indictment does not change the nature of the offense, and therefore may be remedied by amendment."). The amendment of the indictment to reflect an expanded range of dates for Counts 1 through 7 did not prejudice Petitioner because his sole defense was that he had never sexually abused C.K., and he claimed that her allegations were the product of lies and fabrications. See id.

Therefore, the Court finds that the state court's decision was not contrary to clearly established federal law.

### e.     Ground II(e)

Petitioner contends that Counsel "did not object to, challenge, or request a mistrial when the prosecution, in its closing, introduced evidence previously deemed as inadmissible hearsay and precluded by the trial judge." (Doc. 1 at 8.) In denying relief, the trial court adopted the following rationale articulated in the State's response to his Rule 32 petition:

> Petitioner's contention that trial counsel failed to object to the admission of "inadmissible hearsay" evidence is, again, not supported by the record. Counsel's objection to the admissibility of the confrontation call was denied by the trial court. Because the evidence was properly admitted, counsel had no grounds on which to object to the prosecutor's closing remarks concerning that evidence.

(Exh. T at 9-10; Exh. V.)

Review of the record demonstrates that Petitioner has failed to demonstrate deficient performance. The trial court's denial of relief was neither contrary to, nor an unreasonable application of, clearly established federal law. Before trial commenced, and in Petitioner's presence, the State moved to preclude Petitioner from offering in evidence the confrontation call, based on precedent holding that a defendant may not offer his own exculpatory out-of-court statements as admissions by a party-opponent, pursuant to Arizona Rule of Evidence 801(d)(2)(A), and that such statements may not be admitted without satisfying an exception to the hearsay rule. (Exh. A, Item 46; Exh. C at 4-7; Exh. E at 58.) Counsel conceded the

State's position, and the court granted the State's motion to preclude the recording. (Exh. C at 6-7.)

However, on cross-examination, Petitioner testified that he lacked knowledge that C.K. had told L.K. about his sexual misconduct, and that he therefore did not know the reason why the police followed his truck on August 29, 2005, 2 days after L.K. placed her confrontation call. (Exh. E at 56-59, 69-72.) To impeach Petitioner's claim that he was ignorant of the reason the police were following him, the prosecutor asked him about the tape-recorded telephone call that L.K. had placed on August 27, 2005:

> MR. BILLAR: Objection, Your Honor. I think there was a Motion in Limine filed by the State to preclude that call from even coming in because it's inadmissible hearsay.
>
> MS. COHEN [the Prosecutor]: Inadmissible hearsay if the defense chooses to bring it in. Now it's coming in for impeachment because [Petitioner] lied.
>
> THE COURT: Objection overruled.

(Id. at 58.)

In its rebuttal case, the State called Detective Lucero to offer the recording of this confrontation call in evidence. (Id. at 69-72.) When the State moved to admit the recording in evidence, Counsel objected, "[a]gain, this is subject to the Motion in Limine." (Id. at 72.)

During closing argument, the State mentioned the confrontation call twice without objection, while asserting that: (1) Petitioner's statements during the confrontation call – he had his pants on when he rubbed his penis against C.K.'s vagina, and L.K. did not need to take C.K. to the hospital because he did not engage in "extreme" misconduct – constituted proof that he had molested C.K.; and (2) the recording showed that Petitioner, who was in the courtroom when the court granted the State's motion to preclude admission of this confrontation call, attempted to turn that ruling to his advantage by falsely testifying that he did not know why the police had stopped his truck on August 29, 2005. (Id. at 93-94, 103.)

The foregoing demonstrates that Counsel did timely object, but was overruled, when the prosecutor cross-examined Petitioner about the confrontation call and later when she moved the recording in evidence. (Id. at 58, 72.) Consequently, Petitioner cannot prove that

Counsel rendered deficient performance on those two occasions. Although Counsel did not object to the prosecutor's closing remarks referencing this recorded telephone call, the court's prior adverse rulings demonstrated that any such objection would have been overruled and therefore futile. Again, the Sixth Amendment does not require counsel to make groundless motions or arguments. See <u>Kimmelman</u>, 477 U.S. at 375.

### f.    Ground II(f)

Petitioner contends Counsel "did not motion for an acquittal or new trial based on insufficient or the absence of any evidence to sustain a verdict." (Doc. 1 at 8.) In denying relief on this ground, the trial court adopted the rationale articulated in the State's response to his Rule 32 petition:

> Petitioner's contention that trial counsel failed to move for a judgment of acquittal is not supported by the record. The trial court denied counsel's motion for judgment of acquittal under Rule 20, Ariz. R. Crim. P. ([Exhibit D:] R.T. 3/7/06, at 173.)

(Exh. T at 10; Exh. V.)

Indeed, the record demonstrates that Counsel moved for a directed verdict of acquittal at the close of the State's case by stating, "I would make a Rule 20 motion. I make it for the record at this time." (Exh. D at 173.) Thus, the Court finds that Petitioner cannot establish deficient performance. The state court's decision was not contrary to clearly established federal law.

### 2.    Ground Three

In Ground Three, Petitioner claims that "state errors denied a fair trial." (Doc. 1 at 10-11.) Petitioner refers to Arizona Rules of Evidence 404(c) and 609(b) and contends that the trial court's admission of evidence related to his 1985 prior conviction for attempted child molestation "violated [his] right to due process." (<u>Id.</u>)

On direct appeal, Petitioner argued that the trial court committed reversible error when it allowed the State to use propensity evidence under Ariz. R. Evid. 404(c) for "an offense obtained by an *Alford* plea over twenty years previously without making specific findings required by the Rules of Evidence." (Exh. H.) Petitioner also stated that the court committed

reversible error by failing to make any findings, pursuant to Ariz. R. Evid. 609(b), that the probative value of impeaching Petitioner with his 1985 conviction for attempted child molestation substantially outweighed the risk of unfair prejudice. (Id.)

On December 20, 2007, the Arizona Court of Appeals issued its memorandum decision affirming his convictions and sentences stating, in pertinent part:

¶ 3 Prior to trial, the State filed motions in which it announced its intention to introduce evidence of Davis' 1985 conviction for the attempted molestation of T. to impeach Davis, should he testify, and pursuant to Arizona Rule of Evidence ("Rule") 404(b). In the Joint Pretrial Statement, the State also disclosed its intention to present the testimony of T. as well as that of the probation officer who prepared Davis' presentence report in that case and a videotaped deposition of a police officer who questioned Davis during the investigation of the prior offense.

¶ 4 Davis did not object to the admission of any of this evidence. Rather, he now argues that the trial court erred in admitting the evidence because of its prejudicial nature and the unreliability of the testimony regarding the underlying facts given the age of the 1985 case. Specifically, he faults the court for not *sua sponte* rejecting the evidence pursuant to Rules 404 and 403.

¶ 5 Davis not only had ample notice of the State's intention to offer the evidence, the admission of the evidence served his purpose because his primary defense was that C.'s mother had used her knowledge of his prior child-molestation conviction to fabricate the current charges in an effort to coerce him into not leaving her and taking their children. His failure to object at trial served to forfeit any right to appellate relief absent fundamental error, *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005), and we find no such error because Davis, given notice of the State's intent to use the evidence, not only failed to object when the evidence was offered but appeared to have used the evidence to his advantage as part of his defense.

¶ 6 Davis disputes this analysis, contending that he did not waive the issue because he filed a post-trial motion for acquittal *in propria persona* in which he argued that the evidence was inadmissible and that, "despite repeated request[s]," his defense counsel did not respond to the State's Rule 404 motion. Davis was, however, represented by counsel when he filed his motion, and he is bound by his counsel's strategy not to challenge the evidence in furtherance of his defense. *See State v. Levato*, 186 Ariz. 441, 445, 924 P.2d 445, 449 (1996) (Defendant bound by counsel's intentional choice of trial strategy.)[.] There is no right to hybrid representation, and, therefore, Davis was not entitled to be heard independently of his counsel. *See State v. Cornell*, 179 Ariz. 314, 325, 878 P.2d 1352, 1363 (1994). ...

¶ 7 Davis [also] contends that the trial court improperly permitted the State to impeach him with not only the 1985 conviction but two convictions for the possession of drugs. Again, because he failed to object during trial to the use of the convictions for this purpose despite the State's specific notice of its intention to do so, we need only review for fundamental error, *Henderson*, 210 Ariz. at 569, ¶ 19, 115 P.3d at 607, and we find none.

¶ 8 Evidence of the 1985 conviction was properly admitted for the purpose stated above. Davis argues, though, that, because the conviction was more than twenty years old, it was incumbent upon the trial court to first find that the probative value of the evidence substantially outweighed its prejudice pursuant to Rule 609(b) before this conviction could be used for impeachment purposes. Davis never asked the court for such a ruling, however, when the State sought to use the 1985 conviction to impeach him, and the court is "presumed to know the law and apply it in making [its] decision[.]" *State v. Trostle*, 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997) (citation omitted). Absent any record to the contrary, we trust that the court engaged in the appropriate Rule 609 balancing even if it did not explicitly do so on the record. ...

(Exh. K at 2-5.)

The Court finds that this conclusion was not contrary to clearly established federal law. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, this Court is prohibited from reviewing whether "other crimes" evidence was properly admitted by the state court pursuant to the Arizona Rules of Evidence. Instead, the admission of evidence at a state trial will form the basis for federal habeas relief only when the evidentiary ruling renders a trial unfair in violation of a petitioner's due process rights. See Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

The United States Supreme Court has "very narrowly" defined the category of infractions that violate the due process test of fundamental fairness. See Dowling v. United States, 493 U.S. 342, 352 (1990). Pursuant to this narrow definition, the Court has declined to hold that evidence of other crimes or bad acts is so extremely unfair that its admission violates fundamental conceptions of justice. See Estelle, 502 U.S. at 75 & n.5 (stating that Supreme Court was expressing no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) (rejecting the argument that due process requires the exclusion of prejudicial evidence). Thus, there is no clearly established Supreme Court precedent which holds that a state court violates due process by admitting propensity evidence in the form of other acts evidence. See, e.g., Bugh v. Mitchell, 329 F.3d 496, 512-13 (6th Cir. 2003) (state court decision allowing admission of evidence pertaining to petitioner's alleged prior, uncharged acts of child molestation was not contrary

1  to clearly established Supreme Court precedent because there was no such precedent holding
2  that state court violated due process by permitting propensity evidence in the form of other
3  bad acts evidence).

4          Moreover, although "clearly established Federal law" under the AEDPA refers only
5  to holdings of the United States Supreme Court, this Court notes that even under Ninth
6  Circuit precedent, Petitioner would not be entitled to relief. The Ninth Circuit has held that
7  the admission of "other acts" evidence violates due process only when "there are no
8  permissible inferences the jury may draw from the evidence." <u>Jammal</u>, 926 F.2d at 920; <u>see</u>
9  <u>Boyde v. Brown</u>, 404 F.3d 1159, 1172 (9th Cir. 2005). Therefore, whether or not the
10 admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not
11 violate due process unless the evidence is "of such quality as necessarily prevents a fair
12 trial." <u>Kealohapauole v. Shimoda</u>, 800 F.2d 1463, 1465 (9th Cir. 1986).

13         As the Arizona Court of Appeals explained, prior to trial, both in pretrial motions and
14 in the pretrial statement, the State disclosed its intention to introduce evidence of Petitioner's
15 1985 conviction to impeach him, should he testify at trial. Thus, the evidence detailing
16 Petitioner's prior conviction for attempted child molestation allowed for a permissible
17 inference – to impeach Petitioner's credibility in light of his testimony on direct examination.
18 Moreover, Petitioner failed to object to the admission of any part of this evidence. Rather,
19 Petitioner used the admission of the evidence to support his primary defense that L.K. used
20 her knowledge of his prior conviction to fabricate the current charges in an effort to coerce
21 him into not leaving her and taking their children. Therefore, admission of the evidence did
22 not render Petitioner's trial fundamentally unfair in violation of his due process rights, and
23 the Court will recommend that Petitioner's claim asserted in Ground Three be denied and
24 dismissed.

25                                  **CONCLUSION**

26         Having determined that Ground One is procedurally defaulted; Ground Four fails to
27 state a basis for federal habeas relief; and Grounds Two and Three fail on the merits, the
28

Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 13th day of May, 2013.

Michelle H. Burns
Michelle H. Burns
United States Magistrate Judge